It is our position that the District Court erred in this case by finding Mr. Flaherty ineligible for a 3582 reduction based on the changes in drug weight calculations. We believe that the Davis-Enbanc decision is dispositive in this case. As we argued, the guidelines touched Mr. Flaherty's sentencing disposition at every step. There are guideline discussions in the text of the plea agreement, in the sentencing memoranda, at the change of plea hearing, and at the sentencing hearing. Specifically, we see paragraph 10 of the plea agreement stating that the guidelines are applicable to this case and the Court will determine the ranges. That is at ER 29. Paragraph 10A sets forth the base offense level, discusses a potential guideline enhancement, and provides for acceptance of responsibility at ER 30. All of those issues are similar to what occurred in the Davis case. Paragraph 10E discussed Mr. Flaherty's career offender status and set his criminal history at category 6. That is at ER 31. The Government based its argument for 300 months on the guidelines. It specifically discussed the applicable guideline range of 292 to 365 months and used that as a basis to create its 300-month recommendation. That is at ER 143. The Court noted that Mr. Flaherty was facing a sentence within the guideline range and stated that it was required to consider the guidelines at ER 150 and 155. In determining what the appropriate guideline range was, the Court carried out all the calculations and came to that guideline range recommendation of 292 to 365 months. On these bases, we believe that Mr. Flaherty's sentence was based on the guidelines as defined by Freeman and further interpreted by this Court in Davis and that he is eligible for a sentence reduction. Even setting aside for the moment that the Government sought a sentence within the guideline range, this Court talked about the clearly rooted in the guidelines in Davis and it specifically went over all of the factors that I have just discussed, whether the District Judge determined the guideline range, the agreement and the additional calculations for enhancements in it as well as the acceptance of responsibility. Yes. Let me ask you a question. So Davis is well and good, but the Supreme Court just granted cert in two cases, Hughes and Coombs. Correct. I am not mistaken, right? Yes. Should we be concerned about that? Your Honor, I think it was... The circuits split in the way in which the circuits were interpreting the Supreme Court's opinion and fractured opinion in Freeman. Correct. I think the answer to the Court's question is at this point, the Davis decision is binding precedent. It is not as if the cert grants have affected the Davis decision. Now, hypothetically, I suppose the Supreme Court could issue a decision in either or both of those cases that would touch upon Davis. But at this point, we don't have a situation where the mandate in Davis is not given effect or that the Davis decision is somehow bad law. We don't know what the Supreme Court will ultimately do. Will it issue a decision that's different than Davis? I can't rule that out, but could it dig it as improvidently granted? It could. Could it issue a narrow decision that doesn't affect Davis? It also could. So at this point, Davis is binding precedent, and particularly as an en banc decision, binds all subsequent panels. Counsel, let me ask you a related question on that. If we were to vacate and remand for resentencing under the theory that the sentencing guidelines just had to play some role in the sentence that was set, then on remand, the District Court would be aware of these cases where a cert is granted and could be confronted by decisions in those cases. With that being the case, should we hold off on our decision until those cases are decided, one way or another? Respectfully, Your Honor, I think the answer is no, the Court shouldn't hold off. What I would note as a practical matter, 3582 resentencings typically are not an entirely new sentencing hearing in which defendants are transported back to the court and the like. They're sort of a limited scope resentencing. I think the Supreme Court talked about that, I believe, in Dillon. I think this Court talked about that in Waters. So we don't have a situation, for example, where Mr. Flaherty could be transported from a faraway location back for no purpose if the decisions came out otherwise. If the government wanted to move in the District Court to stay proceedings, the government could do so, obviously. What decision ultimately the District Court reaches would be a different story. But there's nothing at a practical level that would cause the need to do so. And, again, in regard to Judge Paez's inquiry earlier, Davis is the law at this time. And based on the reductions that would be applicable in this case, it is entirely possible, if not likely, that the District Court would sentence Mr. Flaherty differently based on the significant reductions that would be applicable to him, even in taking into account the C1C range. Thank you. Well, even the District Court said he wasn't even entitled to consideration for an exercise of discretion, because just because you satisfied the first part of the test, that is it's based on a guideline range, still the District Court has discretion about whether or not to re-sentence. Absolutely, Your Honor. And we recognize that Judge Nielsen could look at the 3553A factors, et cetera, and simply say, I'm not going to grant relief. That would obviously be something he could do. But he hasn't done that, because his order does make it clear that he finds Mr. Flaherty ineligible, which is the legal determination that we're arguing is wrong under Davis. So I agree. We could still lose on the merits, but we deserve a ruling on the merits, which we haven't gotten yet. And do I understand that you would think we should vacate and remand for re-sentencing? Yes. If we did that and we had a footnote saying that that's without prejudice to any right of the government to seek a stay pending those decisions? I would concede that the government could move for a stay in the District Court pending the decisions in the Supreme Court. I would agree with that. Okay. Okay. Thank you. I'll reserve the remainder. We have some time for rebuttal. Good morning, Your Honors. Russ Smoot on behalf of the United States. In listening to the Court's questions and the answers provided, I think the United States has a disagreement as to what occurred, and this is why. In the Davis decision, simply adopted what was stated in Freeman by the plurality. And I would submit that the operative words in Freeman as quoted in Davis are that even when a defendant enters into an 11C1C agreement, the judge's decision to accept the plea and impose the recommended sentence is likely to be based on the guidelines, and when it is, the defendant should be eligible to seek relief under 3582C2. I would submit that the operative words in this case are likely to be based on because likely does not mean always. In the other words, when it is presupposes that there would be times when it isn't. In this case, we have a defendant who is sentenced prior to the 782 amendment. Upon the amendment, the defendant filed for a reconsideration of his sentence. Unlike many defendants that we had in our district in which the district court summarily dismissed the motion based on the fact that it was an 11C1C plea, this case did go to the district court after Davis. The district court indicated that it reviewed the file and it ultimately made a fact finding not of external witnesses or evidence presented, but a fact finding arguably of its own decision. So the very source of how the sentence was based or how the sentence came about came from the very person, the senior district judge, that said the sentence was not based on a guideline range. So the question is, so I would relate this very much, and maybe this is where a clarification of Freeman Davis in this circumstances may be appropriate, in that I view this very much like when the Ninth Circuit, when this Court says, we have jurisdiction to hear everything, but that doesn't mean that we have the ability to resolve an issue. It may be an issue is waived. It may be that an issue is precluded for some other reason, but this Court always retains jurisdiction to hear it, and in practical effect of what happened here is that the district court did not summarily say, we have no jurisdiction to hear this case because it was an 11C1C. The district court said, all right, as in the record, I've reviewed everything. Davis was submitted in the briefing and the district court said, this case, even though I'm required, all courts are required to look at the guidelines, this case, this sentencing by my own finding, my own determination was not based on the guidelines. He did more than just look at the guidelines, though. Oh, yes. Yes. In this case, you know, we talk about the district court having discretion. Freeman says that a district court always has the discretion to determine what's an appropriate sentence, but that's not always the case. In fact, there are statutes that don't apply, that the guidelines don't apply. Aggravated identity theft, the 924C possession and use of a firearm cases don't. The court has no discretion in those. They have to apply the mandatory sentences. In this case, the defendant was looking at a potential of mandatory life if the United States didn't file those two convictions. If that had occurred, the court would have no discretion. The United States didn't file those two, it just filed one, but in effect, the court's discretion was still tempered. The courts could not have sentenced the defendant lower than 20 years because one, 851, had been filed, and if the court had sentenced the defendant lower than 22 years, which was the agreement, which, by the way, is not an agreed upon, is not a range that is relevant in the guidelines, but if the court sentenced them below 22 years, then the United States would have had the option to withdraw, file the additional 851, and perhaps temper or perhaps eliminate all of the court's discretion. So it's fair, I think, the fair inference is that the court can say that its decision to accept that plea agreement range was not based on the guidelines, which was an opposite, but was based on the fact that perhaps there were other things in play. Right after he determined what sentence he was going to impose, he said, and it's right below the guideline. That's correct. Now, if the court had not... It seemed to me, indicated that he was clearly basing his sentence on the guidelines. He was very sensitive to what the guideline range was, and that's how he fixed his sentence. Your Honor, that... Within the parameters that were provided for in the 11C1C agreement. I would submit, Your Honor, if we didn't have the court's articulation of the order denying the motion, then that might be a fair speculation in the absence of any further discussion. But when the court says... Well, I mean, that's not speculation on my part as to what he said. He said what he said. Yeah. But he also said in the order that the court is required to determine what the guidelines are and is required to articulate what the guidelines are in every case. Had the court not... Had the court completely ignored the guideline analysis and simply said the parties have agreed between 22 and 25 years, and I picked 23, I think we would likely be in the same position or a similar position to how the defendant Davis was when he first appealed and the court didn't calculate the guidelines correctly, it was sent back, the same sentence was imposed, but it was only because it was procedurally flawed because the court didn't articulate the guidelines correctly. So on this threshold question of whether or not the clarity was eligible to seek a reduction, are we reviewing the district court judge's decision for abuse of discretion or de novo? I would respectfully submit it would be abuse of discretion. Because this is like a... It's almost analogous to a jurisdictional question. Almost, and here's why. And I say this because the court could easily have said, I cannot review this because it is an 11C1C plea agreement. I do not have the jurisdiction, but in this case, our position of the record is that the court indicating that it reviewed everything, looked at the record and said, I find that he's not eligible by saying that it does not meet the legal standards because the sentence that I imposed, the judge imposed, was not based on the guidelines, but rather was based on other factors that I, the district judge, considered. Very much like saying, again, back to my example of this court, saying we have jurisdiction to hear whether or not the defendant waived appeal, but now we're saying he waived appeal so we're not going to look at his issues. And that is how, that is, I believe, how, what occurred. And the fact that there was much discussion of the guidelines, for example, the plea agreement talks about the guidelines. The change of plea hearing talks about the guidelines. The sentencing talks about the guidelines. Mind you, very, very little does it talk about the guidelines. In fact, the sentencing hearing says, I have to consider the guidelines. If the plea agreement never said a word about the guidelines, and it would still, the law still requires the judge to determine it. It would be in the pre-sentence report and the judge would still be required to address it. So it's been a long time since I was a district judge, but when I was a district judge back in the 90s, we saw these C1C agreements, not very frequently, but when we did, and those were the days when the guidelines were mandatory, if I remember correctly, back in the 90s, the parties would agree upon a specific sentence, not at all related to the guidelines. And we had to indicate whether or not we were willing to go along with that. You know, we wouldn't, subject to the pre-sentence report and all that stuff. But once we accepted it, that's the sentence that we would impose, irrespective of all the guidelines, you know, the other guidelines. And it morphed over the years. Once we got out of the mandatory guidelines, it morphed into this situation where you got, where everybody's fixing these ranges and it's on the, it's a way of sort of getting around the discretionary nature of the guidelines. I don't know if that's the right, I don't know if I'm saying it correctly, it's been a long time since I've done this. But I think, I recognize what the court's pointing out and I think that was my experience as well. And I would submit, at least within our district and my experience in these cases, in that, you know, sometimes a set, a set sentence, a set discrete term is not necessarily what the defendant wants or the government wants. So in many cases we've come up with ranges. And then also, sometimes the district courts, it's, I guess, how should I put this, it gives a little bit of discretion back. Obviously the court has all the discretion not to accept it. But I think that in many of these cases we've found that these ranges are more acceptable to the parties' negotiations as well as presenting it to the court with a little bit more of a range of discretion. So maybe that's a little off subject, but that... Mr. Fischer, may I have a question for you? Yes. No. Oh. No, I'm sorry. I was just clearing my throat. Thank you. And my time is over. Thank you. Thank you. Thank you. Thank you. I'd like to thank, oh, Mr. Campbell's coming back for a reply. Go ahead, Mr. Campbell. Thank you. If the government were correct that discretion and consideration of other factors was enough to take this out of the guidelines, then I think Davis would have come out the other way. But it didn't. The court, all courts have to consider the 3550, excuse me, 3553A factors, and they do it every sentencing. But that doesn't take it outside the guidelines, and the Supreme Court's made clear in various decisions that the guidelines serve as a starting point, as a benchmark. I think Judge Paez's observation that the district court referred to this being just below the guidelines is important. This is not a case where somebody received the mandatory minimum sentence, which is tens or hundreds of months away from what the guideline range is, nor is it a type of case where somebody receives a sentence well above the guidelines because it's running concurrent with a State court decision. This is a situation where the C1C range had significant overlap with the guidelines. The government also explicitly argued that the guidelines should inform what the district court would decide in this matter. The government cited to both in its sentencing memo and its sentencing that the court should essentially follow the guidelines. So obviously, the guidelines were informing the court's decision. And then finally, to address the issue of the standard of review, I think Judge Nielsen's order makes it very clear. He is making a legal determination when he states, and I'm looking at ER 110, approximately line 16, though the court concludes that defendant is legally ineligible for a reduction. Legally ineligible, that to me is essentially a jurisdictional determination that the court lacks the authority to reduce the sentence. I don't think there's any way to recharacterize that as some sort of factual finding that's subject to abusive discretion. This is a De Novo review case based on his determination that Mr. Flaherty is legally ineligible and I believe he's entitled to resentencing. And just so the record's clear, if I could go back to the Coons issue, I had a moment or two to think about it. I think the issue, while technically it's possible that the Coons decision could affect this case, I think it's unlikely in that it appears that the determinative issue in Coons is a situation where somebody received a sentence below the mandatory minimum due to cooperation. And that's simply not factually what we have here. The mandatory minimum was 20 years and Mr. Flaherty received a sentence . . . Well, there's the other case, Hughes, which I believe is a . . .  At this point . . . Which is another C1C3 case, I believe, out of the Eleventh Circuit. Yes, and I'd have to go back through and review it in detail to give a more detailed discussion of that. In any event, I appreciate the court's time. Mr. Campbell, thank you. Thank you. Let me just say, before we close out this one, that again, I want to thank Mr. Campbell, Mr. Smoot, for traveling all the way from Spokane to see us and joining our rainy city instead for a day. So with that, the case of Flaherty shall be submitted.
judges: Fisher, Gould, Paez